***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Houser. The appealing party has shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject of this case, the parties are properly before the Commission, and the parties are subject to and bound by the provisions of the North Carolina Worker's Compensation Act at all relevant times.
2. On all relevant dates, an employment relationship existed between plaintiff and defendant-employer.
3. On all relevant dates, defendant-employer was self-insured with Sedgwick Claims Management Services as its third party administrator.
4. The parties stipulated that plaintiff's average weekly wage would be determined by an Industrial Commission Form 22 Wage Chart that was submitted with the Pre-Trial Agreement.
5. The parties stipulate that plaintiff was terminated from his employment with defendant-employer on June 8, 2004.
6. At and subsequent to the hearing, the parties submitted the following:
a. A Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2);
b. A Packet of Industrial Commission Forms, which was admitted into the record, and marked as Stipulated Exhibit (3), and;
c. Plaintiff's Answers to Interrogatories, which was admitted into the record, and marked as Stipulated Exhibit (4).
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was forty-three (43) years of age, with his date of birth being September 23, 1960.
2. Plaintiff began his employment with defendant-employer in August 1999 as a maintenance mechanic. On March 3, 2003, while Working for defendant-employer in that capacity, plaintiff was assigned to find a hydraulic leak in a pre-press machine. To accomplish this task, plaintiff climbed onto the pre-press to determine the source of the leak. While on the pre-press, a hose burst and began spraying hydraulic fluid. To avoid the fluid, plaintiff jumped from the pre-press onto the floor. When plaintiff hit the floor, which was then covered in hydraulic fluid, his feet came out from under him causing him to fall, landing on his head, neck, back and the right side of his body.
3. At the hearing, plaintiff testified that he was dazed following his fall and could not respond for a few minutes to his co-worker, Mr. Larry Townsend. Later on the day of his fall plaintiff reported the incident to his supervisor, Mr. David Dudney. At the hearing before the deputy commissioner, Mr. Dudney corroborated plaintiff's testimony by testifying that plaintiff had advised him that he had slipped and fallen in hydraulic fluid after a hose had ruptured. Mr. Dudney further testified that he could not locate an accident report on the date of the incident so one was not completed that day, and testified that he did not file an accident report later because he did not believe plaintiff's injuries were serious.
4. Mr. Gary Milligan, plaintiff's co-employee and usual shift partner, testified that plaintiff told him of his fall shortly after it occurred. Mr. Milligan further testified that plaintiff continued to speak of experiencing pain and headaches following the fall, but that plaintiff did not initially pursue the claim because of a fear of being terminated.
5. Mr. Deward Hughes, also a co-worker, testified that he first learned of plaintiff's fall from other sources, but that plaintiff had later told him about his injuries and the incident at issue. Mr. Hughes also testified that he frequently witnessed plaintiff taking over the counter pain medications at work and complaining of headaches subsequent to 3 March 2003.
6. Regarding notice of the incident to defendant-employer, Mr. Hughes testified that plaintiff informed him that he had reported his fall and injuries to Mr. Dudney, but that Mr. Dudney had basically ignored his claim. Additionally, Mr. Hughes testified that prior to the incident at issue, he had been told by Mr. Dudney that the plant manager, Mr. Tom Miller, would fire a worker if they filed a worker's compensation claim. Mr. Hughes also testified of an occurrence when he had advised Mr. Miller about having broken two fingers in a work accident, and was told to put his hand in his pocket and move on.
7. Ms. Denise Anderson, a shift supervisor, testified that maintenance employees feared termination if they reported and pursued workers' compensation claims. Ms. Anderson further testified that she was aware of plaintiff's work-related injuries and indicated that his claim should have been officially reported and documented.
8. Subsequent to March 3, 2003, plaintiff continued to work for defendant-employer until June 2003. During this period, plaintiff continued to experience severe pain and headaches for which he took over the counter medications. Additionally, plaintiff testified that his co-workers assisted him in the performance of his duties. In June 2003, plaintiff took medical leave for a hernia surgery that was unrelated to his claim. One physician that treated plaintiff for his hernia was Dr. Mark Tillotson, whose records indicate that plaintiff also reported experiencing pain and headaches for which he was referred to Dr. Richard Young, an orthopedic surgeon. When examined by Dr. Young, plaintiff reported having been injured in a fall at work. Dr. Young then referred plaintiff to pain management.
9. On August 20, 2003, plaintiff's family physician, Dr. Thomas Marcinowski, medically excused him from work and referred him to Dr. Mark Rodger, also an orthopedic surgeon. Dr. Rodger initially examined plaintiff on October 15, 2003. On that date, plaintiff reported being injured at work in March 2003 when he jumped down to avoid a high pressure hose that had broken, and that he had slipped and fallen on the floor which was covered in oil. As a result of his fall, plaintiff reported to Dr. Rodger that he injured his head and neck, and that he had since been experiencing headaches, tenderness in his hands, and occasional shooting pain down his arms.
10. Dr. Rodger ordered x-rays and scheduled plaintiff for a CT myleogram. These diagnostic tests revealed that plaintiff had severe central spinal canal stenosis at the C4-C5 and C6-C7 levels due to hard and soft discs, both of which were pinching the spinal cord and nerve roots. As the result of his examination and diagnosis of plaintiff, Dr. Rodger performed an anterior cervical discetomy and fusion procedure using BAK cages at the C4-C5 and C6-C7 levels.
11. Following a period of recovery, Dr. Rodger assigned plaintiff a fifteen percent (15%) permanent partial disability rating to his back based upon the two level fusion. Additionally, Dr. Rodger assigned plaintiff permanent restrictions consisting of light duty or less, which is occasional lifting of twenty (20) pounds or less, climbing and height restrictions and restriction regarding over head work. Plaintiff reported to Dr. Rodger that he had also injured his right knee, arm and wrist in his fall, but these injuries were minor in pain compared to the ruptured disc.
12. Dr. Rodger has opined that the plaintiff's fall at work in March 2003 was more likely than not the cause of the injury for which he treated plaintiff.
13. For his right knee, arm and wrist, plaintiff was treated by Dr. Richard Bahner, who diagnosed plaintiff as having epicondylitis of the right elbow, which is inflammation of the attachment of tendons to the bones at the elbow, mild carpel tunnel syndrome of the right hand and problems related to a non-union fracture of his right wrist. Dr. Bahner also diagnosed plaintiff as having sustained a tear of his medial meniscus of his right knee for which he recommended surgery.
14. At his deposition, Dr. Bahner testified that he last examined plaintiff on September 16, 2004. As of that date, Dr. Bahner opined that absent additional treatment, he would find plaintiff to have reached maximum medical improvement. Dr. Bahner assigned a nineteen percent (19%) permanent partial disability rating to plaintiff's upper extremity based upon his untreated carpal tunnel syndrome and medial neuropathy and his non-union fracture of his ulnar styloid. Additionally, Dr. Bahner assigned a four percent (4%) permanent partial disability rating to plaintiff's right lower extremity based upon his untreated medial meniscal tear. Dr. Bahner also assigned permanent restrictions that included no climbing or independent weight bearing on plaintiff's right leg and limiting impact activities that might involve jumping, squatting or kneeling. Dr. Bahner further opined that use of plaintiff grip or use of vibratory tools could aggravate his carpel tunnel syndrome. Finally, Dr. Bahner testified that these restrictions were in addition to those assigned by Dr. Rodger.
15. On the issue of causation, Dr. Bahner has testified that he found no other possible cause for the medical problems associated with plaintiff's right wrist, arm or knee other than the fall at work on March 3, 2003
16. Plaintiff's testimony regarding the circumstances of his injury, the reporting of his injury and his symptoms is accepted as credible by the undersigned.
17. The circumstances of plaintiff's injury on March 3, 2003 constituted an interruption of his regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences.
18. On March 3, 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. As the direct and natural result of, and causally related to his March 3, 2003 injury by accident, plaintiff sustained injuries to his neck and head and to his right knee, arm and wrist.
19. Plaintiff received employer-funded short-term disability benefits from June 6, 2003 to December 6, 2003.
20. The medical treatment provided to plaintiff by Dr. Rodger and Dr. Bahner was reasonably necessary to effect a cure and provide relief for plaintiff's symptoms resulting from his March 3, 2003 injury by accident.
21. As the result of his compensable injury by accident, plaintiff has been unable to earn any wages in his former position with defendant-employer or in any other employment for the period of August 20, 2003 through the present and continuing.
22. On March 3, 2003, plaintiff's average weekly wage was $717.68 that yields a compensation rate of $478.45.
22. Plaintiff's Industrial Commission Form 18 was filed on or about 8 October 2003.
24. In violation of the Act and Rules, defendant failed to file an Industrial Commission Form 19, thereby subjecting it to a fine of $25.00 to be paid to the Industrial Commission.
25. Despite its failure to file the proper forms in this matter, based upon the totality of the evidence, defendant's defense of this case has not been based upon stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On March 3, 2003, plaintiff's average weekly wage was $717.68 that yields a compensation rate of $478.45. N.C. Gen. Stat. § 97-2(5).
2. On March 3, 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). As the direct and natural result of, and causally related to his injury by accident, plaintiff sustained injuries to his neck and head and to his right knee, arm and wrist. Id.
3. As the result of his March 3, 2003 injury by accident, plaintiff is entitled to be paid by defendant ongoing total disability compensation at the rate of $478.45 per week for the period of 20 August 2003 through the present and continuing until such time as plaintiff returns to work, or further order of the Commission. N.C. Gen. Stat. § 97-29.
4. As the result of his March 3, 2003 injury by accident, plaintiff is entitled to have defendant pay for all related medical expenses incurred or to be incurred, including expenses associated with treatment provided and recommended by Dr. Richard Young, Dr. Thomas Marcinowski, Dr. Mark Rodger and Dr. Richard Bahner. N.C. Gen. Stat. §§ 97-25; 97-25.1.
5. Defendant is entitled to a credit for the employer-funded short-term disability benefits paid to plaintiff. N.C. Gen. Stat. § 97-42.
6. Because defendant failed to file an Industrial Commission Form 19, is subject to a fine of $25.00. N.C. Gen. Stat. § 97-92; Workers' Compensation Rules 104.
7. Because, overall, defendant's defense of this case has not been based upon stubborn, unfounded litigiousness, defendant is not subject to a sanction pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant shall pay to plaintiff ongoing total disability compensation at the rate of $478.45 per week for the period of August 20, 2003 through the present and continuing until such time as plaintiff returns to work, or further order of the Commission. From the amounts having accrued, this compensation shall be paid in a lump sum. This compensation is subject to the attorney's fee approved herein and the credit in defendant's favor for short-term disability benefits paid to plaintiff.
2. Defendant shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his March 3, 2003 injury by accident, including expenses associated with treatment provided and recommended by Dr. Richard Young, Dr. Thomas Marcinowski, Dr. Mark Rodger and Dr. Richard Bahner.
3. Defendant shall pay as a fine for failing to file an Industrial Commission Form 19 an amount equal to $25.00 to be paid by a check payable to the North Carolina Industrial Commission and forward the payment to Ms. Carolyn Wall, Accounts Receivable, at the Industrial Commission address.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
5. Defendants shall pay costs.
This the 17th day of August, 2005.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER